GOULD and others, commissioners of highways of the town of Lisbon. *vs.* GLASS.

| 19 | 179 |
| 132a | 247 |

Actions may be brought by commissioners of highways, in their own names, with the addition of their name of office.

But when actions are thus brought, the complaint should, by proper averments, show that the claim is made by the officer, and not by the individual.

Merely adding to the names of the plaintiffs, in the title of the cause, the words "Commissioners of Highways," &c. will not render the action an action in favor of the plaintiffs in their official character, unless the necessary averments are inserted in the complaint.

The words added will be considered merely *descriptio personæ.*

Thus where a complaint, in the title of the cause, at the commencement thereof, described the plaintiffs as "C. H. G." &c. "Commissioners of Highways of the town of L." but did not, in any other part, contain any intimation that the suit was brought by the plaintiffs in their official character, nor aver that the plaintiffs were commissioners of highways, or that they complained as such; nor did they demand judgment as such; *Held,* that the action was to be deemed as brought in favor of the plaintiffs in their individual character.

Although a defendant may demur, in such a case, if he chooses to do so, it is entirely optional with him; and his election not to avail himself of the right, will not preclude him from taking advantage of the error at any stage of the cause.

Where a case originates in a justice's court, neither the supreme court nor the county court has any power, under the code, to amend the pleadings therein, on appeal.

Commissioners of highways have authority to lay out highways, &c. according to the provisions of the statute, without any application therefor, in writing, by a person liable to assessment.

The general highway act, giving to commissioners of highways the power to lay out new roads, so far as the same is applicable to wild or unimproved lands, is unconstitutional and void, because no mode is provided for compensating the owners for damages, or the value of the land.

User alone is sufficient to establish a dedication of land to public use; but if there be no other evidence of the fact, it must have continued for twenty years.

A dedication, in fact, of land to the public use, must be the free and voluntary act of the owner, with intent so to dedicate; otherwise no right enures to the public.

That is a question of fact, to be determined by the jury, from the evidence.

THIS was an appeal from the St. Lawrence county court. The action was originally commenced in a justice's court, and on a plea of title being interposed, the cause was transferred to the county court by virtue of the provisions of §§ 55 to 62

of the code.   It was there tried by a jury.   The complaint was as follows : " Calvin H. Gould, John Sheldon and John McBride, commissioners of highways of the town of Lisbon, against John Glass. The plaintiffs above named, complain of the above named defendant, and say that on, &c. he wrongfully obstructed a certain highway in the town of Lisbon, by, &c. so as to obstruct and prevent the use of the same by the public." Also for a further cause of action, the plaintiffs state the defendant did, &c., setting forth another like obstruction ; and demanded judgment for a penalty of $5 for each obstruction, according to the provisions of the statutes, &c.   The answer denied the complaint, and also set up title to the *locus in quo* in the defendant, and denied that it ever was a highway.

On the trial in the county court, the plaintiffs proved, by the town clerk, that they were the present acting commissioners of highways of the town.   They also produced from the records the following order : "At a meeting of the commissioners of highways of the town Lisbon, in the county of St. Lawrence, at the house of Peter Wells, in said town, on the 4th day of June, 1840 ; all the commissioners having been duly notified to attend the said meeting, for the purpose of deliberating upon the subject matter of this order ; it is ordered and determined by the said commissioners, that the two following new highways be laid out in said town, of the width of three rods.   The first, on the application of Hugh McGill, &c. (describing such road.) The second highway is situated, &c. (describing it.)   The above highway is laid three rods wide, and the lines are run in the center, and the whole distance is through unimproved lands, and was run on the application of William Young.   June 18, 1840            AARON ROLPH,      ⎞ Commissioners
                     WM. H. REYNOLDS, ⎠ of Highways."

To the reading of this order in evidence the defendant objected—1st. That it appeared upon the face of the order that the road was laid out through unimproved lands, and the commissioners had no authority to lay out a road through such lands, the statute under which they claimed to act being unconstitutional, in that it does not provide for compensation to the owners.

Gould *v.* Glass.

2d. The commissioners had no jurisdiction of the subject matter of the order, because it did not appear that any application, in writing, was made to them for the highway, by any person liable to be assessed for highway labor. The court overruled the objection, and the defendant excepted.

The plaintiffs then proved by a surveyor, that Commissioner Reynolds and himself went to the defendant's house on the 4th day of June, 1840, and found the defendant there; that he went with them on to the land where this highway is run; that the application was for a road to run on the line between the defendant's lots; that the defendant objected to such line; that he consented to the road run, rather than the other line. Reynolds, the commissioner, testified that he was present when this road was run out. An application had been made by Eaton and Young for a road. "The surveyor and myself went to the defendant's house and told him we had come to survey a road through his lots. From there we went on to his lots. There was a clearing that came down across the line of his two lots. The defendant did not want the road to run on that line; said that he preferred it should run through the woods; that he was willing to accommodate the applicants with a road, but at the same time wished himself to be accommodated in the location of it. Defendant gave directions as to the points of compass the road should be run, and designated the angle to cross the 25 acre lot. We made no agreement for damages; none was claimed; nor were any assessed or paid; nor was any order made incorporating this road into a highway district. This road did not connect with any other road at the rear end." The witness could not say the application for the road was in writing. Two persons occupied lots in the rear, and they had worked the road some, and had traveled it in going in and out, but the road had never been worked under the authority or by direction of the commissioners. After proving the obstructions complained of, the plaintiffs rested; and the defendant moved for a nonsuit, on the following grounds:

1st. The plaintiffs have sued as individuals, and not in their official capacity as commissioners, and as individuals, have

shown no right to recover. 2d. The commissioners had not jurisdiction of the subject matter of the order, the application therefor not being in writing. 3d. The commissioners had no right to lay out a road through unimproved lands, the statute under which they claimed to act being unconstitutional, in that it does not provide for compensation to the owner ; or if it does, it was not complied with, there being no assessment of damages, or release thereof by the defendant ; or any agreement therefor with the defendant. 4th. The evidence does not establish a dedication of the road to the public by the defendant ; nor is there proof of an acceptance of the road by the public or its officers ; or of a twenty years' user of the same. The court denied the motion, and the defendant excepted.

The town clerk was then recalled by the defendant, and testified that he had made search in his office, and was unable to find any order or paper showing that this road had ever been incorporated into any highway district. Timothy Jones, sworn for defendant, said he was a highway commissioner of the town of Lisbon in 1840, with Reynolds and Ralf ; that he had no recollection about this road ; could not say he was not notified to meet with the other commissioners in laying it out ; but was strongly of the opinion he was not notified. The evidence being closed, the court, among other things, charged the jury, " that if they believed from the evidence submitted to them, that the road in question was laid out by an order of the highway commissioners of the town of Lisbon in 1840, and a survey and record thereof duly made, and that such road had been opened, worked and traveled as a public way within six years thereafter, and that the same had been unlawfully obstructed by the defendant, the plaintiffs were entitled to recover." On this point the court stated the law thus : " that the recital in the order, of an application for the road in question, was *prima facie* evidence of a written application, if any application in writing need be made to authorize commissioners to lay out highways through lands lying in a state of nature ; and that an appraisal and payment of damages is not necessary, when the land taken for a highway, like this in question, is wild

Gould *v.* Glass.

land, not improved, inclosed or cultivated." The court further charged, "that if, from the evidence of the plaintiffs, they believed the defendant voluntarily threw open or set apart the land in question for a public road, and that by his consent and acquiescence the land in question had been used as a public road since about the year 1840, then the public had acquired a right of way, upon the principle of dedication, although the commissioners had not followed the statutory requirements in laying out the highway in question.; that twenty years' use was not necessary to create this right in the public; *that there was in his opinion sufficient evidence, if the jury believed. the witnesses,* of a dedication by the defendant of the ground in question as a public highway." To all of the above charge the defendant's counsel duly excepted.

The defendant's counsel then requested the court to charge, that the evidence was not sufficient to justify the jury in finding a dedication of the road in question to the public. The court refused so to charge, and the defendant excepted. The defendant's counsel further requested the court to charge the jury that they should find for the defendant, 1st. Unless they were satisfied, from the testimony, that the defendant voluntarily dedicated the land in question to the public for a highway; or 2d. If they were satisfied, from the evidence, that the application for the road was not in writing, and there was no dedication of the same by the defendant to the public; or 3d. If they were satisfied, from the evidence, that no notice had been given to Jones, the third highway commissioner, of the meeting of the commissioners to make the order laying out the road; and they were further satisfied there was no dedication of the same by the defendant to the public.

The court declined to charge any or all of the foregoing propositions, and the defendant duly excepted. The jury found for the plaintiffs. Upon judgment being entered thereon, the defendant appealed to this court. The cause was argued here by

*T. V. Russell,* for the plaintiffs.

*Morris & Cooley,* for the defendant.

Gould *v.* Glass.

*By the Court,* JAMES, J. The penalty sought to be recovered by this action is one in which the plaintiffs, as individuals, have no interest; and, therefore, if the action is not brought in their official character, it cannot be sustained; and this question must be determined by the complaint, which also includes the title of the cause. The statutes provide that actions may be brought by commissioners of highways in the name of their office. (2 *R. S.* 473, §§ 92, 93.) And the supreme court has held that such actions are properly brought in the name of the individuals with the addition of their name of office. (*Supervisor of Galway* v. *Stimson,* 4 *Hill,* 136. *Overseers of Pittstown* v. *Overseers of Plattsburgh,* 18 *John.* 407. *Todd* v. *Birdsall,* 1 *Cowen,* 260.) But when actions are thus brought, the pleading should, by proper averments, show that the claim is made by the officer, and not by the individual. The complaint in this action, tested by the principles laid down in *Merritt* v. *Seaman,* (2 *Selden,* 168;) *Ogdensburgh Bank* v. *Van Rensselaer,* (6 *Hill,* 240;) *Delafield* v. *Kinney,* (24 *Wend.* 345,) and *Hunt* v. *Van Alstyne,* (25 *Id.* 605,) and numerous other cases of like character, is an action in favor of the plaintiffs as individuals, and not one "in their name of office." The affix to their names in the title is a mere *descriptio personæ.* The declaration in *Merritt* v. *Seaman* was almost identical with the complaint in this. It was "Charles H. Merritt, executor, &c. of John Simpson, &c. plaintiff, &c." In deciding that case, the court of appeals says, "This is the only part of the declaration that contains any indication that the suit is brought by the plaintiff in any other than his individual character. The promises are all laid to the plaintiff individually, and no mention is made of letters testamentary, either in the declaration or the testimony. This mode of describing the plaintiff as executor is, upon all the authorities, to be regarded as merely a *descriptio personæ,* in no respect changing the character of the pleadings, or the rights of the parties under them." Justice Cowen, in *Hunt* v. *Van Alstyne,* (*supra,*) said, "The declaration is one by the defendant Hunt in his own right; calling himself president of a certain company

is a mere *descriptio personæ.*" In the case of the *Ogdens-burgh Bank* v. *Van Rensselaer,* Justice Bronson said, " this is an action against Henry Van Rensselaer, and the words which follow his name, president of the St. Lawrence Bank, can only be regarded as a *descriptio personæ.*" The question has been decided in *Delafield* v. *Kinney.* It was also decided at the last term, on the argument of a cause, where the declaration was framed in the same way against an executor; and it is decided in all the precedents in the books. In the present action, the title is the only part of the complaint which contains any intimation that the suit is brought by the plaintiffs in any other than their individual character. They nowhere aver that they are commissioners of the town of Lisbon, or complain *as* such. It is the *plaintiffs* that complain of the defendant; it is the *plaintiffs* that demand judgment; it is Calvin H. Gould, John Sheldon and John McBride, plaintiffs, that have obtained the judgment, and not the commissioners of highways, nor Gould, Sheldon and McBride *as* commissioners of highways. The word *plaintiffs,* as used in the complaint and in the judgment, can only be held to mean the individuals, and not the officer.

It was urged " that the plaintiffs intended to sue in their official character, as was evident from the claim." I have not the least doubt of that. But we are not interpreting a contract, and searching out the meaning of parties from doubtful and equivocal words. It is the construction of a pleading, which must be construed according to what it says, and not what the pleader intended. (6 *Hill,* 240.) The plaintiffs should have averred that they were commissioners; that as such they complained of the defendant; and the judgment should have been entered in their favor as commissioners, &c. As now entered, the record would be no bar to another action for the same obstructions, properly brought by the commissioners.

It was urged on the argument, that if there is an error, the defendant has waived it by not demurring to the complaint. It is true that the defendant might have demurred at the joining of issue in the justice's court, but he waived no rights by not doing so. It was entirely optional with him whether he

---

Gould *v.* Glass.

---

would demur or not, (*Code*, § 64, *sub.* 6 ;) and his election not to avail himself of that right, does not preclude him from taking advantage of the error at any other stage of the case. The code, § 148, expressly provides that when the complaint does not state facts sufficient to constitute a cause of action, the defendant shall not be deemed to have waived his right to take advantage of such defect, by failing to demur ; and the same practice prevails in justices' courts under § 64.

The plaintiffs' counsel further insisted that, should this court come to the conclusion that this was an action by the plaintiffs in their individual, instead of their representative, capacity, then, under the power given by section 173 of the code, we should amend the pleadings so as to conform them to the proofs, and not reverse the judgment for such cause. My first impressions were that the court had such power to amend, but a further and more careful consideration of the point has satisfied me that section 173 has no application to a case like the present. I am doubtful if the power exists in this court to amend the pleadings in any case brought into this court by appeal from an inferior court. In such cases we have to deal with the record just as we find it, (*Bellinger* v. *Ford*, 14 *Barb.* 252,) and the power to amend the record, in my judgment, should be confined to the court in which the action originated ; and such, I think, was the intention of the makers of the code. But this action originated in a justice's court. (*Brown* v. *Brown*, 2 *Seld.* 106.) Upon issue joined with plea of title it was discontinued, and reversed in the county court. In actions commenced under such circumstances the plaintiff is required by statute to complain for the same cause of action *only* as that on which he relied before the justice ; and the defendant is confined to the same defense. (*Code*, § 60.) This section seems to exclude all amendment, after the action passes from the justice's court. It has been held that a party might put his pleading into proper form, (*Wendell* v. *Mitchell*, 5 *Howard*, 424 ; 4 *Id.* 44; 7 *Id.* 404 ;) but the same authorities hold that there can be no change in matters of substance. That would not allow of an amendment changing the character of the party plaintiff. If, therefore, a

new trial were granted, and the case sent back to the county court, the same difficulty would still exist, as regards the character in which the plaintiffs have sued, without any power in that court to obviate it. Had the cause originated in this court, on granting a new trial an amendment would have been ordered on terms; or, had the cause originated in the county court, on granting a new trial the cause would go back to that court, leaving it to exercise its powers of amendment on such terms and in such manner as it saw fit. As the case stands, there seems no other course than to reverse the judgment. The code, section 330, confers upon the appellate court the power to reverse, affirm or modify the judgment; or, if necessary or proper, to order a new trial. As a new trial would be of no avail, it would be neither necessary or proper.

The second question presented for consideration is, was the *locus in quo* a public highway by the act of the commissioners? The defendant insists that it was not. 1st. Because the order laying out the road did not show, nor did the plaintiff prove on the trial, that the application therefor was in writing, or made by a person liable to be assessed for highway labor. 2d. Because the statute authorizing the laying out of highways, if applicable to wild and unimproved lands, is unconstitutional, for the reason that it does not provide for compensation to the owners thereof.

The commissioners of highways in the several towns of the state are vested, by statute, with the care and superintendence of existing highways; and they are also vested with the power, in the manner and under the restrictions in said statute provided, to lay out, on actual survey, such new roads as they shall deem necessary. (1 *R. S.* 501, § 2.) Those restrictions are, that a road shall not be laid out through any orchard or garden, buildings, fixtures, &c., without the consent of the owner; nor through any inclosed, improved or cultivated land, without the consent of the owner or occupant, unless certified to be necessary by the oath of twelve respectable freeholders of the town. (1 *R. S.* 513, §§ 57, 58.) The manner, so far as relates to roads through wild and unimproved land, except proceedings on ap-

Gould *v.* Glass.

peal, is provided by sections 55, 56, (1 *R. S.* 513,) unless section 54 be applicable. Section 55 provides, that "whenever the commissioners, &c. shall lay out, &c. any road, either upon application or otherwise, they shall cause a survey to be made of such road, and shall incorporate such survey in an order to be signed by them, and to be filed and recorded in the office of the town clerk." Section 56 makes it the duty of the town clerk to post a copy on the outer door of the house where the town meetings are usually held. It will thus be seen, that by virtue of the power given in section 2, and by adopting the manner provided by sections 55 and 56, commissioners may lay out new roads through wild and unimproved land, " if they shall deem such roads necessary and proper," whether applied for or not. But the defendant's counsel insists that section 54 is a part of the manner declared in section 2, and, unless pursued, the commissioners acquire no jurisdiction to lay out any road. That section reads thus : " Every person liable to be assessed for highway labor, may apply to the commissioners of highways to lay out a new road. Every such application shall be in writing, addressed to the commissioners, and signed by the person applying." In the case of *Harrington* v. *The People,* (6 *Barb.* 607,) in treating of this question, Justice Paige says, " to give the commissioners jurisdiction, an application should have been made to them in writing, by a person liable to be assessed for highway labor." If this construction is right, then the defendant's first point is well taken ; for neither by the order or the proof did it appear that the application was in writing, or that the applicant was liable to be assessed for highway labor. The charge of the county judge, " that the recitals contained in the order was *prima facie* evidence of a written application," was erroneous. No court or officer can acquire jurisdiction by the mere assertion of it. (5 *Hill,* 168. 6 *Wend.* 452. 5 *Id.* 158. 5 *Barb.* 607.) A statement or recital, in a record of an inferior tribunal, of facts constituting jurisdiction, may be received as *prima facie* evidence of such facts, (11 *John.* 226 ; 12 *Wend.* 102 ; 15 *Id.* 372 ;) but if such record omit to state facts necessary to give jurisdiction, without proof of the necessary facts

*aliunde*, it is not evidence for any purpose.  (11 *Wend.* 647. 2 *Cowen & Hill's Notes*, 1013.   5 *Wend.* 292.)

But, with great deference, I am compelled to dissent from the construction given to the highway act, in the case of *The People* v. *Harrington*, on the point under consideration.   Section 54 is but permissive in its language ; it confers upon the citizen, liable to assessment, the power to set the commissioners in motion, when from any cause they shall fail, neglect or refuse to act ; while section 55, by its language, implies power in the commissioners to lay out roads, " either upon application or otherwise," " if they shall deem them necessary."   Any other construction would deprive the highway commissioners of all volition in laying out new roads, or altering or discontinuing old ones.   Until set in motion by written application from some person liable to highway labor, they would be mere passive instruments, unable to act in the discharge of one branch of their important duties.   No such thing was contemplated by the statute.   The want of a written application did not, of itself, vitiate the act of the commissioners.

The defendant's next point is, that the statute under which the commissioners assumed to act, if applicable to wild and uncultivated lands, is unconstitutional.   I approach the consideration of this point with great doubt and hesitation.   The statute under which the plaintiffs assumed to act was passed more than forty years since, and the power claimed for it has been extensively exercised, during the intermediate period, throughout the state ; and although its constitutionality, in respect to the particular point under consideration, has been often doubted, yet I am not aware that the question has ever before been presented to the courts for adjudication.

The general highway act gives to the commissioners of highways the power to lay out " such new roads in their respective towns as they may deem necessary and proper."   If, in the exercise of that power, it becomes necessary to take improved or cultivated lands, the act provides for compensation to the owners ; but if wild and unimproved land be required and taken for the same purpose, no mode of compensation whatever is pro-

vided. It has generally been supposed, and the principle acted upon, that the owner of wild land taken for a highway, by the commissioners, was without any redress for the loss of his property. But such, I apprehend, was never the law.

This road now in question was laid out in 1840. The constitution of this state then in force was that adopted in 1821. The seventh section of the seventh article of that instrument declares, " nor shall private property be taken for public use, without just compensation." It cannot seriously be contended but that the wild and unimproved land of the citizen is now, and always was, as much private property as his inclosed or improved lands ; and if so, the legislature had no more constitutional power to authorize the taking of one for public use, without compensation, than the other. A provision for compensation is a necessary attendant on the due and constitutional exercise of the power of the lawgiver to deprive an individual of his property without his consent. (2 *Kent's Com.* 339.) It being a constitutional provision that government has no right to take private property without a just compensation, it would seem necessarily to be implied that the indemnity should, in cases which will admit of it, be previously and equitably ascertained, and ready for payment, concurrently in point of time with the exercise of the right of eminent domain. In some of the states of this union it has been held that compensation must precede the taking of private property for public use. ( *Thompson* v. *Grand Gulf Banking Co.*, 3 *How. Miss. R.* 240.) But, in this state, the court of last resort says : " It is enough that provision is made for the assessment and payment of damages or compensation ; it is not necessary that the damages or compensation should be actually ascertained and paid previous to the appropriation of the property." (*Bloodgood* v. *The Mohawk and Hudson Rail Road Co.*, 18 *Wend.* 9.) In the decision of this last case Chancellor Walworth said, " I hold, that before the legislature can authorize the agents of the state and others to enter upon and occupy, destroy or materially injure the private property of an individual, (except in cases of actual necessity which will not admit of any delay,) an adequate and certain

Gould *v.* Glass.

remedy must be provided whereby the owner of such property may compel the payment of his damages or compensation." In the case under consideration, no provision is made for compensation to the defendant, and it was not a case of necessity to bring it within the exception above stated.

It is conceded that the legislature is the law-making power; that it is one of the organs of the sovereignty of the state, and the proper one to exercise the power of eminent domain. But that body must exercise its rights and powers in subordination to the constitution. That instrument "is a higher law" to the legislature. The inhibition in the constitution is, "that private property shall not be taken for public use without a just compensation;" and any act of the legislature empowering commissioners of highways, or any other officers or persons, to enter upon and take private property for public use, without having provided an adequate and certain remedy whereby the owner may obtain compensation, is not only unconstitutional, but a violation of natural right and justice. (*Bradshaw* v. *Rodgers*, 20 *John.* 103. *Vanderbilt* v. *Adams*, 7 *Cowen*, 349.) My conclusions are, that the defendant's second point is well taken, and that the general highway act, so far as it authorizes the laying out of roads through wild and unimproved land, no mode for compensation to the owners being provided, is unconstitutional and void.

Upon the argument of this cause, the plaintiffs' counsel urged upon the consideration of the court a matter not appearing in evidence, but of which it was insisted the court might properly take judicial notice, as it was a part of the public history of the state, viz: "That prior to the settlement of the county of St. Lawrence, the state of New York was the proprietor of all its lands ,and—like the king of England, to whose sovereignty and title to these lands it succeeded—the state, in its exercise of the right of eminent domain, could open highways through its territories. In parting with its title to these lands it could, of course, like any other owner, make such reservations and conditions as it pleased. Now it is well known that the township of Lisbon was part of the lands conveyed by the state

in 1792, by letters patent, to Alexander Macomb, reserving five acres out of every one hundred acres in said tract for highways; and this reservation is in pursuance of the act of the legislature authorizing the sale of the public lands. Each subsequent purchaser of these lands, of course, takes his title subject to the original reservation. The state, by laying out and opening roads by its local agents through these lands, is not guilty of taking private property but only exercises its own right, reserved for the public benefit, by express stipulation of the original grant." I have thus stated the whole of the plaintiffs' proposition, and pronounce it fallacious in all its conclusions. This court cannot take judicial cognizance of the matters set forth in this argument. But suppose it otherwise, or that all those matters were properly and legitimately before us, in what respect would it help the plaintiffs' case ? The reservation in the letters patent is void for uncertainty. But the statement of the letters patent, as made by counsel, does not in law constitute a " reservation," but an " exception." A " reservation" in a deed, or other instrument, is of a thing not in being at the time of the grant, but which is merely created by it; while an " exception" is a part of the thing granted. (*Bouv. Law Dic.* vol. 1, *p.* 492. 2 *Id.* 467. *Hilliard on Real Property*, 353.) To make an exception in a deed valid, it must be by apt words—it must be of a part of the thing previously described; and the part excepted must be particularly excepted and set forth. In a lease of a tract of land, except one acre, the exception would be void, because the acre is not particularly described; so of a grant of land, excepting one and a half acres, reserved for the use and flowing of water for a mill. ( *Woodf. Landlord and Tenant*, 10. *Co. Lit.* 47 *a.* *Shepherd's Touch.* 77. 2 *Hilliard on Real Property*, 353. 6 *N. H. Rep.* 421. 20 *John.* 85.) And in all such cases, whereon there is any doubt or uncertainty, it always enures to the benefit of the grantee. (9 *East*, 15. 3 *John.* 387. 8 *Id.* 394.) But were this " exception" or " reservation" valid, and the argument of the counsel sound, the doctrine contended for by him would be apt to bear hard upon private interests, if not upon personal rights. Such

Gould *v.* Glass.

doctrine, if applicable to wild land, is equally applicable to improved land. . If applicable to farming land, it is equally so to village property. If, by virtue of such a reservation, the soil can be taken in a state of nature, equally so can it when covered by erections or improvements, whether of greater or less extent. Under this reservation, at least until one-twentieth of all the land of the town is appropriated to highways, the restrictions of the statute prohibiting the laying out roads through houses, orchards, and gardens, &c. might be set at naught by commissioners claiming to act " as the local agents of the state, only exercising the rights reserved by the state for the public benefit by express stipulation in the orignal letters patent." Can this court say that five acres in the hundred have not already been appropriated to highways? We have no proof on this subject; and if the plaintiffs desire to avail themselves of the exception, the burden of proof rests upon them to show themselves within it.

But supposing this reservation to exist, and that the plaintiffs had proved that one-twentieth of the land in the town was not then appropriated to highways, can these plaintiffs avail themselves of such reservation? As individuals, most certainly not; as commissioners, doubtful. Covenants in a deed are only operative as between the parties; a stranger can take nothing under it, unless by way of remainder. (*Hornbeck* v. *Westbrook*, 9 *John.* 74. *Spencer* v. *Field*, 10 *Wend.* 91.) The plaintiffs as commissioners of highways are in nowise connected with the state. The reservation did not of itself transfer the right reserved to the town, nor constitute its local officers agents of the state, to designate and locate the part reserved, and neither has that power been given by any statute.

Failing to establish and uphold the act of the commissioners, the plaintiffs insist, that independent of their acts, the road in question was a highway by dedication. Dedication is the act of appropriating property to public or pious uses, in such a manner as to conclude the owner. To constitute a valid dedication of an easement, no deed or writing is necessary ; neither is there any particular form or ceremony to be observed. All that is re-

Gould *v.* Glass.

quired is the assent of the owner, and the use of the land by the public for the purposes intended. Such assent, however, must be the free and voluntary act of the owner. If it be extorted by force, or made under a mistake or misapprehension of facts, it is not a free and voluntary act, and cannot be tortured into an express dedication. In this case, the highway commissioners of the town, having the care and custody of the roads, and claiming the right, by virtue of their office, to lay out new roads, came with a surveyor to the defendant's place to lay out a road across his farm between his improved lots. The defendant had not asked for such; he did not want any such road; but supposing the commissioners had the power, and would exercise it, to save his farm from being cut up, he preferred the road should be located as it was. He expressed that preference, and said he "was willing to accommodate the applicants with a road, but wished to be accomodated himself." This was a yielding to the necessity of the case, and driving the best bargain he could, under the circumstances. It was not a free and voluntary act or gift, sufficient to constitute a dedication, to the public use. It is true the defendant did not demand pay for his land; like the commissioners, he probably supposed it could be taken without pay. In considering this subject, I have laid out of view the testimony of the surveyor; his memory of what took place, owing to the time that had elapsed, was quite too indistinct and indefinite to control the case. In my judgment, therefore, there was no express dedication by the defendant of the land, over which this road passed, to the public use. I fully concur with Mr. Justice Bronson, "that the doctrine of dedication has been carried quite far enough, and ought not to be extended. Our title to lands is too important to be lightly lost upon slight presumptions. Before an owner should be deprived of his property, his intention to part with it should be clearly and distinctly expressed; and for greater certainty, it would be far better that to be effective it should be evinced by writing rather than by doubtful conduct, or still more doubtful expressions." (*Badeau* v. *Mead,* 14 *Barb.* 328.)

Gould *v.* Glass.

A dedication of land, however, for a public use, may be presumed from use alone, without any positive assent on the part of the owner. Kent says, "it has been an unsettled question what length of time is required to create the presumption." Justice Hand says, "if user is relied upon to prove dedication, the authorities differ as to the requisite time; but there is no doubt user is sufficient." (*Wiggins* v. *Talmadge*, 11 *Barb.* 457.) In some of the English cases six years, in others eight and twelve years, have been held sufficient; while in another case nineteen years was held insufficient. The true principle to be deduced from these authorities, I apprehend to be, that if there be no other evidence of a grant or dedication, than the presumption arising from acquiescence on the part of the owner in the free use and enjoyment of the way as a public road, the period of twenty years, applicable to incorporal rights, would be required, as being the usual period of limitation. (3 *Kent's Com.* 451.) In this case twenty years not having elapsed since the road was laid out, no dedication from user can be presumed.

In my judgment, therefore, the plaintiffs entirely failed to make out a dedication in *fact*, or by presumption, of the land for this road. The former, however, was a question for the jury, and had they been properly charged by the court upon this branch of the case, their finding would have been conclusive, and no new trial would have been granted on that ground. .

The county judge was also in error in his refusal to charge as requested by the defendant's counsel, "that if the jury were satisfied, from the evidence, that no notice had been given to Jones of the meeting of the commissioners, &c., they should find for the defendant." This request was proper. Jones had given some evidence tending to show that he was not in fact notified, and that testimony was proper for the consideration of the jury to rebut the presumption created by the recital in the order; and the judge erred in not charging as requested, and submitting the whole evidence to the jury.

My conclusions from the foregoing premises are, 1st. That the action, as it now stands, is one in favor of the plaintiffs in their individual character, and that neither this court, nor the

county court, have any power under the code to amend the pleadings therein. 2d. That commissioners of highways have authority to lay out highways, &c. according to the provisions of the statute, without an application therefor in writing by a person liable to assessment. 3d. That the general highway act, giving commissioners of highways the power to lay out new roads, so far as the same is applicable to wild or unimproved lands, is unconstitutional and void, because no mode is provided for compensating the owners for damages or the value of the land. 4th. That user alone is sufficient to establish a dedication of land to public use; but if there be no other evidence of the fact, it must have continued for twenty years. 5th. That a dedication in fact, of land to the public use, must be the free and voluntary act of the owner, with intent so to dedicate; otherwise no right to the public attaches. That such is a question of fact, to be determined by the jury from the evidence.

The judgment of the county court must be reversed.

[WASHINGTON GENERAL TERM, January 1, 1855. Hand, Cady, C. L. Allen and James, Justices.]