THE PEOPLE, *ex rel.* ASPINWALL, *v.* THE SUPERVISORS OF RICHMOND COUNTY.

The power conferred upon the commissioners of highways of a town, by a special act, to lay out a designated road, is to be exercised in the manner prescribed by the existing laws regulating their general duties. It is no objection that such a construction will impose upon the town the expense of a highway, opened for State purposes, to one of its fortifications. It is in the power of the Legislature to determine where the burden ought to rest.

Under the highway law (1 *R. S.*, 513, § 55), the commissioners may lay out a highway upon their own motion, and without any application therefor.

The People *v.* Supervisors of Richmond County.

Where two persons are appointed to fill vacancies in the office of commissioners of highways, without designating the class to which they shall respectively belong, the one first named in the appointment is to be regarded as appointed to the first class, or that highest in numerical order.

The officers charged with the duty of making an assessment of the damages to the owner of land taken for a highway executed a paper stating that by agreement between them and such owner his damages were liquidated at a specified sum: *Held,* a sufficient assessment of damages.

A claim presented to a board of supervisors, who permitted their session to expire without taking any action upon it, is to be regarded as rejected, for the purposes of a mandamus to compel its allowance.

APPEAL from the Supreme Court. The relator obtained an alternative mandamus requiring the defendants to show cause why they should not audit a claim of the relator for damages due to him for the laying out of a public highway in the town of Southfield. They made a return upon which issues were joined and tried at the Richmond Circuit before Mr. Justice ROCK-WELL. These facts appeared: The road was laid out under chapter 274 of 1844, section 6, which authorized the commissioners of highways of the town of Southfield to lay out a public highway to the State property and fortifications near the Narrows on Staten Island. The only application for that purpose was made by the Commissary-General, who was not an inhabitant of the town nor liable to assessment for highway labor. The relator, who was the owner of all the land taken, consented to the laying out upon condition of receiving his damages. On the 19th of December, 1846, an instrument in writing was executed by Jeremiah Silva, describing himself as commissioner of highways, and by two assessors of the town, in which it was stated that it was agreed between them and the relator that his damages for the opening the highway in question be fixed and liquidated at $200. To this paper was attached a certificate of the two justices of the peace that the preceding was "the verdict of one commissioner of highways and two assessors of the town of Southfield, sworn by us to assess the damages," &c. At the preceding town meeting three commissioners of highways had been elected and classified. The commissioners of

the first and third class omitted to qualify, and the vacancies were filled, by an appointment by three justices of the peace of "Jeremiah S. Silva and Joel Moore to the office of commissioners of highways," without any designation of the class to which they respectively belonged. The road butted upon the State property on the east and was there fenced across with a gate: it was but two hundred and eighty-three feet long, and the other end opened upon a public avenue. In 1852 the relator delivered the written evidences of his claim to the supervisor of Southfield, who presented the claim to the board of supervisors at a special meeting. No action was taken upon it. The supervisor of Southfield testified that no objection was made to the form of the claim or the time at which it was presented, but that it was alleged by all the supervisors that the State ought to pay it and not the town. An annual meeting of the supervisors was held soon afterwards, at which the claim was not audited.

An order was made refusing a peremptory mandamus, which having been affirmed at general term in the second district, the relator appealed to this court.

*W. J. Street,* for the appellant.

*L. C. Clark,* for the respondents.

JOHNSON, Ch. J.    By section 6 of chapter 274 of the Laws of 1844, the commissioners of highways of the town of Southfield were authorized to lay out a public highway to the State property and fortifications near the Narrows on Staten Island. The power conferred by this section being given to these officers by their name of office, and being exactly analogous to the general powers which they previously possessed by law, must be regarded as merely additional to those previous powers, and to be exercised under the same regulations, as to their modes of proceeding and further authority in respect to laying out this particular highway, which were prescribed by the existing laws relating to their general duties. It is objected that

The People *v.* Supervisors of Richmond County.

this construction will throw upon the locality where this highway is situated the expense of a road built for State purposes. But the conclusive answer is that the State may impose such a burden where, in the wisdom of the Legislature, it is considered that it ought to rest. The act ought to receive such a construction as will make it effectual for the purpose which its terms indicate, and it can only be effectual by referring to the general law for laying out highways and looking there to find how it shall be proceeded in and how compensation shall be made for lands taken in executing the act. From the terms of section 55 of the law relating to highways (1 *R. S.*, 513), it is plain that the commissioners may proceed to lay out a highway without any application to them. Any person liable to assessment for highway labor may apply to them to proceed, or they may proceed on their own judgment of its propriety. (*Glass* v. *Gould*, 19 *Barb.*, 179.) The proceedings in this case are therefore not vitiated by an application from Commissary-General Storms. They are at least as good as if no one had applied.

. The laying out of this highway and the assessment took place after chapter 180 of the Laws of 1845 was in force, which introduced considerable changes in the law on this topic. Under the provisions of that act it is insisted that the right officers did not act in making the assessment in question. By the Revised Statutes such assessments were to be made by a jury summoned on a warrant from two justices of the peace. (1 *R. S.*, 515, §§ 64–69.) But under the act of 1845 the assessment was to be made by a commissioner of highways of the first class and any two assessors of the town. (*Laws of* 1845, 183, 184, §§ 1–6.) It is insisted that the commissioner who acted in this case was not of the first class. In this the respondents are mistaken. The act provides that where three commissioners are elected, they shall be classified by ballot, and it also provides for filling by appointment any vacancies which should occur, but contains no provision for balloting among those appointed to fill vacancies. The reason is obvious. The original balloting was to settle the class of the commissioners,

and an appointee would of course succeed to the class of the commissioner in whose place he was appointed. In this case the commissioners of the first and third classes failed to qualify themselves for the office, and the vacancies thus occasioned were filled by the proper authorities by appointing two persons, Jeremiah S. Silva and Joel Moore. The appointment fails to designate the class of either of the appointees, and unless it can be aided by construction the appointments would be inoperative. It seems to me a natural construction to place upon such an appointment to regard the first named appointee as appointed to the first class, and that construction I am, in the absence of any authority upon the subject, inclined to adopt rather than come to the conclusion that no effectual appointment was made. We have then in this case what is claimed to be an assessment made by Silva, the commissioner of the first class, and two assessors of the town. They were the officers charged by law with the duty of making assessments. The language of the paper called an assessment, states an agreement by these officers of the one part and Aspinwall, the owner of the property, on the other, fixing the value of the property. It is not signed, however, by Aspinwall; and as the statute calls for no particular language to be employed in the assessment, and as the substance of the assessment is found in the paper, which is a fixing of the amount of the damages sustained by opening the road, it must be regarded as sufficient. Comparing the provisions of the Revised Statutes with those of the act of 1845, the intervention of the two justices of the peace is not necessary under the latter act. They were to issue a warrant to summon a jury, and were to receive and certify their verdict under the Revised Statutes. Under the act of 1845 the assessment was to be made by designated officers, and the assessment was to be delivered to the commissioner who was required to file it with the town clerk in ten days. This assessment appears to have been so filed.

It was not presented to the board of supervisors till 1852, and in 1847 another law was enacted regulating the presentation of such claims. (*Laws of* 1847, *chap.* 455, § 23.) They

The People *v.* Supervisors of Richmond County.

were only required to be presented by the supervisor of the town to the board, but no particular form was requisite. The claim in this case was so presented. It was not allowed nor disallowed by any formal action of the board. It was laid aside without other action, when the duty of the board was to proceed and act upon the claim. It is apparent that it was not allowed because the supervisors thought the expense should fall on the State and not on the town. In this they were in error; and we must hold their conduct to be equivalent to a rejection of the claim, or else leave it in the power of boards of supervisors to postpone action in all cases till such time as they think it fit to proceed.

The judgment should be reversed, and a new trial ordered.

SELDEN and STRONG, Js., took no part in the decision; all the other judges concurring,

Judgment reversed, and new trial ordered.

END OF CASES DECIDED AT SEPTEMBER TERM.

NOTE.—Judge SELDEN was detained by illness from the final consultation upon the cases in which his absence has been noted. Though he was present at the hearing and at the preliminary consultations in most of those cases, the Reporter has not felt authorized to represent him either as dissenting or concurring in their final disposition.