## MARBLE v. WHITNEY.

Where an order was made by two commissioners of highways, laying out a road, in which it was recited that all the commissioners of highways of the town met and deliberated on the subject embraced in the order; and the referee found, as facts, that on the 23d of April, 1839, all three of the commissioners met and viewed the proposed route, and on the 10th of May following, two of them caused it to be surveyed, and made the order of that date laying out the highway; and that one of the commissioners was not present at the survey, nor was he notified to attend the same; *Held*, that the order was valid, in the absence of any finding that the third commissioner did not meet with the others and deliberate on the subject of laying out the highway; the presumption being that all the commissioners did meet and deliberate on that subject, and that the act was legal until the contrary appeared.

*Held, also*, that the survey was a mere ministerial act, not requiring the presence of the third commissioner to give validity to the order laying out and establishing the highway.

It is not necessary to the validity of an order of the commissioners of high-
ways, laying out a road, that there should be an application in writing by
some person liable to be assessed for highway labor; where it is laid out
by the commissioners with the assent of the owners of the lands, such
owners releasing their damages.

Commissioners may, upon their own motion, and without any application there-
for, lay out a highway.

Where, after the making of an order by commissioners of highways, in 1839,
for laying out a road, the road was that year opened in fact, and during
1839, and succeeding years, was opened and partially worked throughout
the route, and was traveled by the public, more or less, every year from
the time of its being thus laid out, opened and worked; *Held,* that this was
an opening and working of the road within six years, as contemplated by
the statute.

The requirement of the statute is, that the road shall be *opened* and *worked*
within six years after making the order; that is, the commissioners shall
have six years in which the road they have laid out may be opened and
worked, but if it be not done within that period, their order laying out or
establishing it shall have no legal effect.

The statute does not prescribe how well, or how much, it shall be worked; if
opened and worked at all, it will not lose its legal existence.

Commissioners of highways may act upon the personal consent of the owner,
in laying out or altering a highway across his lands; and although such
consent may be revoked, it must be done before the road is laid out, or
the alteration made. If the commissioners act immediately, on the faith
of the virtual consent, by laying out the road, or making the alteration, he
will be estopped from denying the legality of the act.

Where such consent has been given under a mistake of law, merely, no relief
can be given, even on a bill in equity, filed for that purpose.

APPEAL from a judgment of the Supreme Court. The
action was for entering on the close of the plaintiff and
throwing down and removing his fences. The defendant
answered, denying the complaint, and alleging that the prem-
ises mentioned was a public highway, and that the defendant
was the commissioner of highways, and as such entered
thereon to remove obstructions and encroachments.

The plaintiff denied that such alleged highway was ever
legally laid out or legally opened, and the principal question
in this case is, was the alleged road a lawful public highway?

The cause was referred to a referee, who found these facts:

1. That since the 4th of April, 1849, the plaintiff owned

and possessed the farm in question, being situate in the town of Maryland, in the county of Otsego.

2. That on the 23d of April, 1839, the three commissioners of highways of the town of Maryland (naming them) met and viewed the route of a proposed highway from the Schenevas creek road northerly across the said farm, which was then owned and occupied by Horace Jones and William Crouch; and on the 1st of May, 1839, Daniel. Platt and Levi S. Boardman, two of said commissioners, met, accompanied by a surveyor, and surveyed or run the line of the route, and made an order laying out a highway, commencing at said creek road at the southeast corner of the plaintiff's farm and the farm of Uriah Spencer adjoining thereto on the east, and running therefrom northerly or nearly northwesterly across the plaintiff's farm and the Baker farm. Nathan Sperry, the other commissioner, was not present at such meeting or survey, nor was he notified to attend the same. (The original order laying out the highway was produced from the town records, and read in evidence as follows:

"A meeting of the commissioners of the town of Maryland, county of Otsego, at the house of Nathan Spencer in said town, on the 23d April, 1839, all the said commissioners having met and deliberated on the subject embraced by the said commissioners, that a highway be laid out in said town, upon application of Joseph Lason, Hubbard Jones and Leonard Baker, and each of them consent thereto, commencing at the Schenevas creek road at the west side of Uriah Spencer's land, and runs thence north, &c., (giving the courses and distances,) to the Milford line, surveyed by Elias Brooks; and it is further ordered, that the line above described be the center of highway, and that the said highway be of the width of three rods. In witness whereof the said commissioners have hereunto subscribed their names, the 1st day of May, 1839.                    DANIEL PLATT, Jun.
                               LEVI T. BOARDMAN,
                                    Com'rs of Highways.

And it is further ordered, that the above surveyed road should be annexed to road district No. 1, Maryland.")

3. That it does not appear that there was any application in writing for such highway; or that any application therefor was made by any person liable to be assessed for highway labor.

4. That the route of such highway was partially opened during the year 1839, and during that year and others was cut out and partially worked, but the log road (referring to a prior traveled track called a "log road," leading north-westerly from the same starting point) continued to be the principally traveled track in the year 1851, although the new route was traveled some, more or less, during each of the years from 1839 to 1851. From 1839 to 1849, and also prior thereto, as well the log road as the line of the new route so laid out were intercepted by fences at different places north of the plaintiff's farm, and also on that farm; which fences were kept up by the owners of the respective farms, but which were taken down and replaced by those desiring to pass along the route.

5. That in August, 1855, the commissioners of highways of the said town of Maryland met at the southern terminus of the line run in 1839, accompanied by a surveyor, to consider an alleged encroachment upon the highway so laid out, and the plaintiff was present at such meeting. Upon taking the bearing of the first course, according to the survey of 1839, as indicated by the order laying out the highway, it was ascertained that from that point the line diverged west of the traveled track, and cut off a strip of the plaintiff's improved field between such line and the traveled track, thereby leaving a gore of land between the line and the adjoining farm on the east. The commissioners represented that they had no doubt the road was originally so laid out, and that unless some compromise or an agreement should be effected they would be required to open the road according to the line thereof as indicated by the order of 1839, which representations they then believed; and the plaintiff fearing

and believing that he would be required to open the road, accordingly consented to be considered as an applicant for an alteration of said highway, so that the first and second courses from the starting point in the creek road would be north, 20 deg. west, 8 chains and 10 links, and thence north, 41 deg. west, 3 chains and 50 links to the center of the road as then used, instead of north, 35 deg. west, 8 chains, and thence north, 44 deg. 30 min. west, 5 chains, as laid out and recorded in 1839. The commissioners proceeded and made the alteration accordingly, and signed an order to that effect, which was filed with the town clerk and by him recorded. That no written application for such alteration was made. Such consent or application was founded in mistake, the plaintiff believing that the highway had been laid out in 1839, and could be opened through his improved field westerly of the traveled track without his consent, by force of the order made by the commissioners in that year.

6. That the plaintiff, in compliance with the requirement of the commissioners, soon after the alteration, moved his fence, thereby opening the road according to the alteration thus made; and some months thereafter the plaintiff replaced his fence, leaving it as before the alteration. Upon being again required by the commissioners, the plaintiff moved his fence according to the alteration, but soon thereafter moved his fence back, and even farther east than where it stood when the alteration was made, whereby a team could not pass along the route of the highway without removing or taking down the fence.

7. That in May, 1857, the defendant, then being the commissioner of highways in the said town of Maryland, entered upon the farm of the plaintiff upon the southern terminus of the alteration, and proceeded upon the line of such alteration until intercepted by the fence so placed by the plaintiff, when he was forbidden by the plaintiff from going further across his farm, as well as from moving or interfering with that or any other fence thereon. The defendant took down

the fence of sufficient width to allow a team to pass, and proceeded on across the plaintiff's farm to his north line, following the line of the survey of 1839, as marked upon the ground, and at the said north line took down and removed the division fence which had before been placed upon and across such line by the plaintiff.

The referee's conclusions of law were, 1st. The highway was not laid out in 1839 according to the statute.

1st. The acts of the two commissioners, on the 1st of May, 1839, in the absence of the other, he not being notified to attend the meeting, were not valid as the acts of the commissioners of the town; and 2d. There should have been an application in writing by some person liable to be assessed for highway labor.

2d. The highway so laid out ceased to be a road for any purpose whatever, as it was not, within the six years, opened and worked as contemplated by the statute.

3. The consent of the plaintiff to the alteration in 1855, and his acts connected therewith, and subsequent thereto, operated as a license, until revocation; and therefore the acts of the defendant in taking down the fences after such revocation and notice thereof, rendered him liable as a trespasser.

4. The consent of the plaintiff to the alteration having been made or given under a mistake or misapprehension of facts, did not estop or prevent him from insisting that the forms of law should be observed before he could be divested of the right to the full enjoyment of his land, although he had prior thereto allowed it to be used as a road across his farm.

5. The plaintiff is entitled to judgment against the defendant for one dollar, besides costs.

On the trial, the defendant proved that upon an examination by the town clerk and another, in the town clerk's office, with a view of finding all papers and records having reference to the road, there was found, with the papers and records of the town in the office, the certificate of freeholders, the order

of 1839 laying out the road, the written release of damages, and the survey.    The defendant offered the survey thus found on the files of the town clerk, in evidence, and the same was objected to on the grounds that it was immaterial and incompetent, and the objection sustained and the paper excluded. It purported to be the survey of the route of the highway, made on the 23d of April, 1839, by Elias Brooks, and was identical with that in the order laying out the highway.

Judgment being entered on the report of the referee, on appeal to the general term of the Supreme Court the same was affirmed.

The defendant then appealed to this court.

*J. E. Dewey*, for the plaintiff.

*A. J. Parker*, for the defendant.

WRIGHT, J.    If the *locus in quo* was a public highway, the defendant, as commissioner of highways, was justified in the entry complained of, and in the removal of the plaintiff's fences.    The referee decided that it was not a highway, at the time of the entry, it not having been legally laid out, or legally opened ; that the consent of the plaintiff to its alteration, in 1855, (some two years before suit brought,) was a mere licence, which the plaintiff could revoke after the alteration was made ; and that such consent having been given under a mistake or misapprehension of facts, the alteration made by the commissioners was void.    In my opinion neither of these positions are maintainable.

1st. Was the highway legally laid out, in 1839 ?    The referee, holding that it was not, gave two reasons for his decision : 1st. That the act of the two commissioners on the 1st of May, 1839, in the absence of the other, he not being notified to attend the meeting, were not valid as the acts of the commissioners of the town ; and 2d. There should have been an application in writing by some person liable to be

assessed for highway labor. The act of the commissioners on the 1st of May, 1839, referred to, was the signing and filing of an order in the town clerk's office, laying out the road in question, in which it was recited that all the commissioners of highways of the town met and deliberated on the subject embraced in the order. The referee found as facts, that on the 23d of April, 1839, all three of the commissioners met and viewed the proposed route, and on the 1st of May following two of them caused it to be surveyed, and made the order of that date laying out the highway; and that one of the commissioners was not present at the survey, nor was he notified to attend the same. It was not found that the third commissioner did not meet with the others and deliberate on the subject of laying out the highway, but only that he was not present at the survey or notified to attend. The revised statutes provide that, "any two commissioners of highways of any town may make an order in execution of the powers conferred in this title, provided it shall appear in the order filed by them that all the commissioners of highways of the town met and deliberated on the subject embraced in such order, or were duly notified to attend a meeting of the commissioners for the purpose of deliberating thereon. (1 R. S. 525, § 125.) The order, therefore, in the present case, was a valid one. It recited that all the commissioners met and deliberated on the subject of laying out the road. The presumption is that he did, and that the act was legal until the contrary appear. There is no finding that the third commissioner did not meet and deliberate with the others on the subject, and looking into the evidence, the truth of the recital plainly appears. The fact that he was not present at the survey, or notified to attend, did not make the order void, or tend to falsify the recital that the third commissioner met and deliberated with his colleagues in respect to its subject matter. The survey was a mere ministerial act, not requiring his presence to give validity to an order of the commissioners laying out and establishing the highway.

Nor was it necessary to the validity of the order, as the referee held, that there should have been an application in writing by some person liable to be assessed for highway labor. There was no affirmative evidence óf an application in writing for the highway, by a person liable to an assessment. It was laid out by the commissioners, with the assent of the owner of the lands, amongst whom were persons through whom the plaintiff derived his title; such owners releasing their damages. Commissioners of highways may, upon their own motion, and without any application therefor, lay out a highway. The precise question has been decided in this court. (*The People* v. *Supervisors of Richmond County*, 20 N. Y. Rep., 252. See also *Gould* v. *Glass*, 19 Barb. 179.)

2. The statute declares that every public highway laid out that shall not be opened and worked within six years from the time of its being so laid out, shall cease to be a road for any purpose whatever. (1 R. S. 521, § 99.) The highway in question, the referee decided, ceased to be a road, as it was not within the six years opened and worked as contemplated by the statute. The facts which he found, and on which he based his legal conclusion were these: after the order was made, and during the year 1839, the road was partially opened, and during that year and others, was cut out and partially worked; it was travelled more or less during each of the years from 1839 to 1851, though a "log road," (a prior traveled track leading northwesterly from the same starting point,) was the principally traveled track in the latter year. From 1839 to 1849, the road was intercepted by fences at different places north of the plaintiff's farm, and also on that farm, which were kept up by the owners of the respective farms, but which were taken down and replaced by those desiring to pass along the route; in other words, there were bars across the road, at some seasons of the year, at two or three points, which travelers let down and put up as they passed over the route. This is a finding in substance, that after the making of the order, in

N. Y. R.—28.             20

1839, the road was that year opened in part, and during 1839 and succeeding years, was opened and partially worked throughout the route, and was traveled by the public more or less every year from the time of its being thus laid out, opened and worked. The statute is that a public highway laid out by commissioners as prescribed by law, if not opened and worked within six years from the time of its being so laid out, shall cease to have any legal existence as a highway. The requirement is that it shall be *opened* and *worked* within six years after making the order; that is, the commissioners shall have six years in which the road they have laid out may be opened and worked, but if it be not done within that period, their order laying out or establishing it shall have no legal effect. The statute does not prescribe how well or how much it shall be worked; if opened and worked at all, it will not lose its legal existence. In this case the highway was opened the same year it was laid out, and, as the referee finds, partially worked. It was opened and worked so that it has been traveled by the public since 1839. The referee clearly erred in the conclusion that "it was not within the six years opened and worked as contemplated by the statute."

' 3. There was, therefore, a legal public highway, at the time of the alleged trespass, without regard to what occurred in 1855. But in 1855, the surveyed route of the road in controversy was altered by the commissioners on the application and by the consent of the plaintiff himself. This alteration was made in August, 1855, the plaintiff executing a writing under seal releasing all damages, and in which it was admitted that the alteration was upon his application. Soon afterwards he moved his fence, thereby opening the road in conformity to the alteration. Some months intervened, when he put it back again; but being again required by the commissioners, moved it according to the alteration. Soon thereafter, however, he moved it back; and even further east than where it stood when the alteration was made, whereby a team could not pass along the route of the highway without

removing or taking down the fence. The consent of the plaintiff to this alteration, and his acts connected therewith, and subsequent thereto, the referee held, operated as a license, until revocation, and therefore the acts of the defendant in taking down the fences, after such revocation and notice thereof, rendered him liable as a trespasser. This was plain error. The plaintiff's consent was not a license that he could revoke after the alteration was made. Commissioners of highways may act upon the parol consent of the owner in laying out or altering a highway across his lands; and although such consent may be revoked, it must be done before the road is laid out or the alteration made. If the commissioners act immediately on the faith of the virtual consent, by laying out the road or making the alteration, he will be estopped from denying the legality of the act. In *The People* v. *Goodwin*, (1 Selden, 568,) it was held that a parol consent was sufficient, and if not revoked before the commissioners acted on the faith of it was irrevocable. In this case the alteration was made immediately on the plaintiff giving his consent, and he at once moved his fence to conform to it.

Again: it was held that the plaintiff's consent having been given under a mistake or misapprehension of facts, the alteration then made by the commissioners was invalid. It is difficult to discover what mistake of fact induced him to give his consent, even if such a consideration could affect the legality of the official act of alteration. It is found that at the time the alteration was made, the commissioners had met to consider an alleged encroachment on the highway. Upon the surveyor taking the bearing of the first course, according to the survey of 1839 indicated by the order laying it out, it was ascertained that from that point (the southern terminus) the line diverged west of the traveled track, and cut off a strip of the plaintiff's improved land between such line and the traveled track. The commissioners represented that they had no doubt the road was originally so laid out, and

that unless some compromise or arrangement could be affected, they would be required to open the road according to the line thereof as indicated by the order of 1839; which representation they then believed; and the plaintiff fearing and believing that he would be required to open the road accordingly, consented to be considered as an applicant for the alteration, which the commissioners immediately proceeded to make. Such consent or application was founded in mistake, (as the referee finds;) the plaintiff believing, at the time, that the highway had been laid out in 1839, and could be opened through his improved field westerly of the traveled track, without his consent, by force of the order made by the commissioners in that year. Here was no mistake or misapprehension by the plaintiff of fact, but of law, if any thing. Whether the road could be opened without his consent, by force of the order of 1839, was a question of law, and not of fact; and there can be no relief in such a case, even on a bill in equity filed for that purpose. But it was of no sort of importance that the application was made and consent given either under a mistake or misapprehension of fact or law by the plaintiff, the commissioner practicing no fraud on him. Here a mere statement or expression of opinion by the commissioners, as to what they conceived would be their official duty, is ingeniously found by the referee to be a representation made to the plaintiff on which he acted; but even this statement or representation is expressly found to have been made in good faith. The plaintiff not only consents, but he is the applicant for the alteration. He calls on the commissioners to perform an official act of public concern, and it becomes a matter of record. The conclusion is a most absurd one, that the plaintiff may treat the act as *ipso facto* void, because of his own mistake, and hold the public officer as a trespasser for acting under an order that he had procured to be made, while it stands upon the record in full force. His consent to, and his acts connected with, the alteration, estop him from denying the validity of the proceeding.

This alteration, in 1855, would be conclusive against any right of the plaintiff to maintain the action. It was done on his motion and for his convenience alone; and was a valid exercise of the powers of the commissioners. No certificate of freeholders was required; for it is only when the consent of the owner or occupant is not given that such certificate becomes necessary. (1 R. S. 514, § 58.)

I am of the opinion, therefore, that the referee erred in the legal conclusions: 1st, that the highway was not laid out in 1839 according to the statute; 2d, that it ceased to be a road, as it was not within six years opened and worked as contemplated by the statute; 3d, that the consent of the plaintiff to the alteration in 1855 was a mere license that could be revoked after such alteration was made; and, 4th, that such consent having been made or given under a mistake or misapprehension of facts, did not estop or prevent him from insisting on the invalidity of the proceeding in this action.

The judgment of the Supreme Court should be reversed, and a new trial ordered, with costs to abide the event.

All the Judges concurring,

> Judgment reversed, and new trial ordered.