NANCY CORDELL, ADMINISTRATRIX, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Public road — 3 R. S. (Edm. ed.), 643 — chap. 62 of 1853.*

Where a road, crossing the tracks of the defendant, has been laid out, districted and traveled by the public for more than six years, it is a public road, within the meaning of section 7 of 3 Revised Statutes (Edm. ed.), 643, requiring the defendant to sound a whistle or ring a bell when approaching it, even though the notice required by section 1 of chapter 62 of 1853 had never been served upon any of the officers therein mentioned.

The omission to sound the bell or whistle, as required by the statute, is conclusive evidence of negligence on the part of the company.

It is not error for the court to read to the jury extracts from the opinion of the Court of Appeals in another case, where there is nothing in the remainder of the opinion qualifying the part read.

It was claimed that, at the place where plaintiff's intestate was killed, certain trees or stumps had been placed, which prevented him from seeing the approaching train. The court, after stating that the defendant was not liable for the acts of its contractors, charged the jury that if the contractor, with the knowledge and approval of the defendant, deposited this obstruction on the ground, and the defendant permitted them to remain where they would obstruct the view of the road, this would be negligence. *Held*, that the charge was correct.

It appeared that the deceased, after he was struck by the train, was seen to hold on to the cow-catcher for some distance, when he fell off. *Held*, that it was not error for the court to call attention to this as showing that the deceased had the ordinary instinct of men, and did not intend to commit suicide, although it was not charged by the defendant that he did intend to do so.

The deceased was killed while crossing the track from south to north. At the place where he was struck there were three tracks, the north track being used exclusively for trains going east, by one of which the deceased was killed. The court charged that if the deceased, immediately before approaching the track, had looked west and discovered no approaching train, the mere fact that when he was in the act of stepping upon the track he cast his eyes to the eastward to see if a train was approaching, did not establish negligence on his part. *Held*, that this was correct ; that he was not required to look continually toward the west, and not at all toward the east.

Defendant's counsel requested the court to charge that as the defendant had never given the statutory signals at this point, its omission to do so on this occasion could not properly be submitted to the jury as bearing upon the question of deceased's negligence. The court charged that, as the law required the company to make these signals, its omission so to do was a circumstance for the jury to consider. *Held*, that this was proper.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff rendered by a jury.

The plaintiff's intestate, Christopher R. Cordell, was, on the 13th day of August, 1873, struck and killed by a locomotive attached to a train of defendant's, at a place in Albany county, near the line between Albany and Schenectady counties. The locomotive was attached to a train going east. There were, at that time, three tracks: the southernmost used by all trains going east, the middle by trains going west, and on the northernmost there was, at the time of the accident, a working train which had just gone west.

Near the point where the deceased was struck was a road that crossed the track. The deceased lived on the north side of this road, and his father, John P. Cordell, on the south side. The plaintiff claimed that this road had been opened as a highway. There was a gate on each side of the railroad, at the entrance of the road, although at that time, in consequence of the building of the additional tracks, the fence was down on the north side.

The deceased, shortly before he was killed, had started to go on foot from his own house, on the south side of the railroad, across the tracks to his father's.

Evidence was given, on the part of the plaintiff, to show that there were obstructions, consisting of locust trees, stumps, etc., which prevented one from looking far up the track, which had been placed there by certain of the defendant's contractors.

The judge, in his charge to the jury, said: But in determining this question of care, or want of care, on the part of the deceased in approaching this track, you will also regard the absence of any signal on the part of the defendant, in directing his attention to the near approach of the train. And here, again, lest I may not state the rule exactly as laid down in the books, I read from another case in the Court of Appeals (*Ernst* v. *The Hudson River Railroad Co.*, 35 N. Y., 9): "The omission of the customary signals is an assurance by the company to the traveler that no engine is approaching from either side within eighty rods of the crossing, and he may rely on such assurance without incurring the imputation of breach of duty to a wrong-doer."  *  *  *  I don't think,

gentlemen, the effect of that case is to exonerate the deceased from all care in approaching a railroad track, but it has considerable bearing upon the amount of care and caution with which the deceased should have approached the track. If the signal had been sounded, you would have, of course, required the utmost degree of diligence and care, and the highest precaution which people take before crossing a track. On the other hand, when the defendant failed to announce the approach of the train as the law required them to do, a person may be pardoned if he does not exercise the highest degree of care, and the utmost amount of vigilance.

With reference, then, to the absence of any signal on the part of the company, you are to determine the question whether or not the deceased approached that track with care — whether he went with the ordinary care and precaution that a man should have taken when approaching a dangerous place where trains might cross, and where, perchance, some employe might fail to do that which the law required, * * * and in determining that question you must look at the man, and regard him as a man who had the ordinary instincts of our nature. He was a man in the prime of early manhood. He had left his wife and family only an instant before, and in approaching that track how would he ordinarily act? You have a right to take that into account in solving this question; and lest I again should be deemed to express myself more strongly upon this branch of the case than I ought to, I will read from the Court of Appeals, from the opinion of Judge PORTER, in the *Ernst Case* (35 N. Y., 29): " In this case the parties inculpated have been sworn. Ernst, of course, could not confront them; but we are to judge him in the light of the evidence, by the ordinary rules which govern human action. He was a man of business, in the vigor of middle life and in the full possession of his faculties. He was a man of family and character, of experience and judgment. He had no apparent motive or inducement to make a wanton sacrifice of his life. He had the ordinary instincts of humanity. If on this occasion he did any thing which he " — further this part would not be specially applicable. I read this to show you that in determining whether a man has been guilty of culpable negligence, which contributes to the result, you are to look at him as a man

who possesses the ordinary instincts of human nature, who would not willingly sacrifice his life. No evidence in this cause tends to show that he was desirous of sacrificing his life; on the contrary, there was evidence of the tenacity with which he clung to the engine after it struck him, showing that he was not desirous of losing his life.

*Matthew Hale*, for the appellant.

*J. H. Clute*, for the respondent.

LEARNED, P. J.:

The first question is, whether the place where the deceased was killed was a "traveled public road," within the meaning of section 7 of the general railroad act (3 Statutes at Large, 643, § 7).

To prove it to be such, the plaintiff produced an order made by the commissioners of highways, March 26th, 1867, and filed in the town clerk's office, laying out this road; and the description therein was identified as the crossing at Cordell's, where the deceased was killed. A release of damages from all of the land owners but one and the assessment and payment of his damages, according to law, were proved. A road warrant issued in 1869 to the overseer of highways was also put in evidence, and it was proved that the road had been worked. The road thus laid out ran from what is known as the middle road leading from Schenectady to Albany to what is known as the king's highway. It was testified that the public traveled the road. There had been, however, gates on the road where it crossed the railroad, after it was opened as above stated. At the time of the accident, there was a gate on the south side, and there had been one on the other side, until it was removed for the purpose of laying down tracks.

It was, however, objected by the defendant, that the provisions of section 1, chapter 62, Laws of 1853, had not been complied with. This section provides that "no such street or highway shall be actually opened for use until thirty days after notice of such laying out has been served personally upon the president," etc. The second section makes it the duty of the railroad corporation, immediately after service of the notice, to cause the street or highway to be taken across their track. The third

section imposes a penalty of twenty dollars per day for a neglect of the company to cause this work to be done for thirty days, to be recovered by the officers laying out such street or highway, to be expended on the same; but permits the County Judge to extend the time for doing the work thirty days longer.

The meaning of this act is plainly to permit, and to require, the railroad company to do the necessary work of carrying the road across their track. But if they were to neglect to do this within the time allowed, it can not be possible that they could thereby stop the opening of the road, and prevent the public from traveling upon it.

There was some evidence tending to show the service of a notice in 1868 or 1869. But such notice was not served on any of the officers mentioned in section 1. It is in proof, however, that after that service the company "bridged" the crossing — that is, put in plank inside and outside the track; that this road was districted before the accident, which was in August, 1873, and that the public traveled it.

Now, the deceased was one of the public. He was entitled to act on the public facts that this road had been laid out and districted, and that it was traveled by the public. He certainly was not bound, before he could safely travel upon it as a public road, to inquire whether the thirty days' notice had been given to the company. There could be no doubt that, on both sides of the railroad track, this was a traveled public road. It would be unreasonable to hold that this road, which had been laid out for six years, was not a continuous highway over the railroad track, so far as the public were concerned. (See *Marble* v. *Whitney*, 28 N. Y., 297; *Walker* v. *Caywood*, 31 id., 51.)

The defendant's counsel excepted to the charge of the court that the omission to sound the bell, or whistle, as the statute requires, was conclusive evidence of negligence. The statute requires the company to give this signal, and says that they shall be liable for all damages which shall be sustained by any person by reason of such neglect. The court was careful to say that, in order to recover, the plaintiff must be free from fault. There seems to be no error in this part of the charge. (*Renwick* v. *N. Y. C. R. R.*, 36 N. Y., 132.)

HUN — VOL. VI.      59

The defendant's counsel excepted to the charge of the judge taken from the opinion in the *Ernst Case.* The court read to the jury a part of the opinion in *Ernst* v. *Hudson R. R. R. Co.* (35 N. Y., 9). It is not suggested that there was any thing in the remainder of the opinion which was necessary to qualify the part which was read. We do not feel at liberty to say that it is error to read to a jury the opinion of the court of last resort. The judge was careful to say to the jury, however, and to impress upon them that the deceased was bound to use his eyes and ears, and that he was not exonerated from care, by the absence of the signals.

The counsel for the defendant further excepted to the charge of the judge in reading to the jury a part of the opinion of the Court of Appeals in *Mackay* v. *New York Central R. R. Co.* (35 N. Y., 75). The judge qualified that part of the charge, at the defendant's request, by saying that the rules excusing travelers from stopping their teams to look out for trains were not applicable to a foot traveler. Thus qualified, the charge seems to be unexceptionable. There were certain trees or stumps, which were alleged to be an obstruction, which prevented the deceased from seeing the train. In regard to the liability of the defendant for these obstructions, the judge charged that, if the contractors, with the knowledge and approval of the defendant, deposited this obstruction on the grounds of the defendant, and the corporation permitted them to remain where they would obstruct the view of the road, that would be negligence; and further said that, as an abstract proposition, the defendant was not liable for the acts of the contractor. He thus placed the liability of the defendant in this particular, on its knowledge, approval and permission. This seems to be sufficiently favorable to the defendant.

The deceased was struck by the cow-catcher, and was seen by one of the witnesses upon it, holding on by the bars, until he fell off. The judge, in his charge, mentioned the fact of the deceased's holding on by the bars, and read, in connection therewith, another extract from the opinion of the Court of Appeals in the same *Ernst Case.* The counsel for the defendant excepted to this extract from the opinion of the Court of Appeals, and requested the court to charge that whether or not the deceased intended to commit suicide was not before the jury, and should not be considered by

them in determining the question as to contributory negligence. But certainly, if the deceased had intended to commit suicide, he would have been guilty of more than contributory negligence. It was not said by the judge that absence of such an intent showed that the deceased was not negligent. And the judge was careful to say that the jury must determine whether the deceased exercised due and proper care in approaching; that if he went on the track looking in the other direction, and not up the track, he was guilty of negligence. We cannot think that it was error to read from the opinion of the Court of Appeals.

The defendant's counsel asked the court to charge that, as the south track was used exclusively for trains going from the west, ordinary prudence required the deceased, both before and after stepping on the track, to look toward the west, and not to turn his eyes toward the east. The court charged that if the deceased, immediately before approaching the track, had looked west and discovered no approaching train, the mere fact that when he was in the act of stepping upon the track he cast his eyes to the eastward to see if a train was approaching, did not make him careless. The defendant's counsel excepted. It has been so often held to be the duty of a person crossing a railroad track to look both ways, that we think that should be considered as settled. Although the track was used exclusively for trains running from the west, still the company would be at liberty to run a train in the contrary direction, or they might back a train westward. So that it would be only reasonable that the person crossing should look out for a train in each direction. And the charge of the judge required that the deceased, immediately before approaching the track, should have looked west. So that the jury must have found that the deceased exercised that precaution.

The counsel for the defendant requested the judge to charge that there was no evidence of negligence, on the part of the defendant, other than that of the omission to ring the bell and sound the whistle. Now, there was no occasion for any charge of this kind. The judge had already charged that the omission to ring the bell and sound the whistle (which was undisputed) was negligence. No other negligence on the part of the defendant was claimed, and the judge had, in fact, pointed to this omission as the only negli-

gence charged against the defendant. It was unnecessary that he should state it again.

After a judge has fairly and accurately, as he supposes, stated the law, following what he deems to be the appropriate order, he is often presented with a large number of requests to charge, many of which have been written without any reference to what he has actually said. Some of them he may have already charged in his own language, and others he has charged in substance.

His refusal to adopt the language of these requests is not to be considered an error, when the law has been already correctly stated.

The counsel for the defendant also asked the judge to charge, that the extract read from the *Ernst Case*, as to the effect of customary signals being omitted, was inapplicable, because, in fact, there was no custom to make signals here. The judge held that the law required the company to make these signals, and that the absence of the signals which the law requires, is a circumstance for the jury to consider. If the doctrine laid down in the *Ernst Case* by the Court of Appeals has been, as the defendant claims, over-ruled by that court in the *McGrath Case*, not yet reported, this charge might be erroneous. In the *McGrath Case*, also, the signals were not such as were required by law. But the judge did not charge that the absence of the signals relieved the traveler from the duty of keeping his faculties alert; only that it was a circumstance for the jury to consider. If this be so, the neglect of the defendant to give such signals on one occasion, or on repeated occasions, did not relieve them from their duty. And the traveler, on a traveled public highway, who approached their track, had a right to expect those signals, even though the company had neglected to give them before. Otherwise, its past negligence might practically annul the law, so far as travelers are concerned.

Another important question arises on the motion for a nonsuit. There are three witnesses who testify that the deceased was standing upon the track looking east when he was struck. The engineer of the train, however, says that when he first saw the deceased he was stepping; that he took two steps, and the second brought him to the first rail of the track. The engineer saw him the earliest possible moment he came in sight. James Cordell testified in regard to the obstruction caused by the embankment, the trees,

and the roots and stumps.   He crossed the track just before the accident.   He was walking, and driving a horse by the reins.   He went on the track to see if a train was coming; to see if it was safe to cross with his horse.   He went on the track because he could not see until he did so.   He says that, standing between the gate and the track, he could only see up the track about four panels of fence.   As the train was running thirty miles an hour, it would have passed over this distance of four panels, or about sixty feet, in about a second and a half.   There is substantially the same testimony from John P. Cordell, who also says that there were but three steps from the gate to the track.   There is other evidence tending to show that the sight was not thus obstructed.   But this conflict presented a question for the jury, and the experience of James Cordell, who, a few minutes before the deceased was killed, found it necessary to go upon the track to see whether he could safely drive his horse over, would be strong evidence as to the actual condition of the place.

If, then, the obstruction was such that the deceased, after coming out of the gate, could not have seen the train until it was within one second and a half of the crossing, no use of his eyes would have prevented the accident.   It seems to us, therefore, that the question of negligence was properly submitted to the jury.

We think that the motion for new trial should be denied, and plaintiff should have judgment on the verdict, with costs.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Ordered accordingly.