## DENNIS McCARTHY, RESPONDENT, *v.* HARVEY WHALEN, APPELLANT,

*Order laying out a highway — the commissioner may act of his own motion — when the survey is sufficiently incorporated in the order — consent of owners — what sufficient proof of — what is a sufficient working of a highway to prevent i: ceasing to be such — Evidence.*

On January 14, 1854, there was filed in the office of the town clerk of the town of Penfield an instrument in writing, bearing date January 2, 1854, signed by the sole commissioner of highways, ordering the laying out of a highway therein, " upon the application of Samuel Strowger, and passing through the improved lands of said Strowger and others, who have consented thereto ; said road commences on the five mile line at Alpheus S. Clark's south-east corner ; thence running westerly to the Drew farm, and between Ichabod Leonard Jr.'s land and William R. Thomas' land, twenty-six rods, according to the survey thereof." The order was recorded in the book of town records, and on the same day, and on the following successive pages of the same book, were recorded an instrument under seal, reciting the laying out of the same highway on April 9, 1853, by which the owners of the lands through which it passed released their claims for damages, and also a survey of the said highway, dated April 9, 1853, and signed by the said Strowger.

*Held,* that the surrounding circumstances sufficiently identified the survey, dated April 9, 1853, as the one referred to in the order of the commissioner, and that the statute requiring the survey to be incorporated in the order was substantially complied with.

That the release signed by the owners sufficiently showed their consent to the laying out of the highway.

It is not necessary to the valid laying out of a highway that there should have been a written application therefor ; the commissioner may act of his own motion.

The west end of the road had never been opened, but the east end of it, to the distance of about three-quarters of a mile, was worked and traveled before and for several seasons after the order was made ; it was crossed at different points by gates, with bars erected by the owners of adjoining lands to keep cattle from straying thereon, and not with the intent of preventing the use of the road ; the gates were open in winter, and travelers were allowed to remove them in summer for the purpose of passing through ; the road had been worked under the direction of the public authority after it had been laid out and up to the time of the commencement of this action.

*Held,* that there was sufficient proof that the eastern portion of the road had been opened and worked, and that it did not cease to be a public highway because the western portion thereof had not been opened and worked within six years from the time it was laid out.

The plaintiff was allowed, against defendant's objection, to testify to declarations made to him by Samuel Strowger, his grantor, to the effect that the attempt

to open the road had been abandoned, and the commissioner had refused to open it further, and that for that reason he, Strowger, had fenced it up. *Held,* error.

APPEAL from a judgment in favor of the plaintiff entered on the report of a referee.

The action was for trespass *quare clausum fregit.* The defendant in his answer alleged that the *locus in quo* was a public highway and justified as commissioner of highways. The only question litigated was as to the existence of the alleged highway.

The action was commenced originally in a justice's court and was discontinued there on title being pleaded.

*A. J. Wilkin,* for the appellant.

*J. & Q. Van Voorhis,* for the respondent.

SMITH, J.:

The alleged highway started in a westerly course from what is known as the "five mile line," in the town of Penfield, and extended by various courses a mile and 138 rods, crossing a farm owned and occupied by the plaintiff.

The referee, in his original report, did not find whether the road was lawfully laid out, but he found certain facts bearing upon that question, which will be referred to presently. Subsequently, on being requested by the plaintiff's counsel to find as matter of law that the road was lawfully laid out, he declined to find as requested, except as stated in his report. The report contained no finding on the point, as matter of law, but the following facts were found, to wit: On January 2, 1854, the sole commissioner of highways, in the town of Penfield, executed and subsequently filed with the town clerk of that town, an instrument, of which the following is a copy: "It is ordered and determined by the commissioner of the town of Penfield, county of Monroe, that a highway be laid out in said town upon the application of Samuel Strowger, and passing through the improved lands of said Strowger and others who have consented thereto; said road commences on the five mile line at Alpheus S. Clark's south-east corner; thence running westerly to the Drew farm, and

between Ichabod Leonard Jr.'s land and William R. Thomas' land, twenty-six rods, according to the survey thereof; said highway is to be three rods in width. In witness, etc. "(signed) Amos Sherwood, commissioner." That instrument was recorded in the town clerk's office of said town on January 14, 1854, in the book of records of the highways of said town, at page 241 of said book. On the same day was recorded in the same book, on page 242, an instrument under seal, which recited the laying out of said highway on April 9, 1853, by the commissioner of highways of said town, and whereby the owners and occupants of the lands through which said highway passed, including the said Samuel Strowger, severally released all claim for damages by reason of laying out and opening said highway. On the same day another instrument was recorded in said book on page 243, signed by the said Samuel Strowger, and purporting to be a survey made by him, dated April 9, 1853, which described a highway by courses and distances for a length of one mile and 138 rods. The referee found that the highway described in the survey is, in fact, the same highway referred to in the said order; but he also found that no mention is made in said order of the said survey of Samuel Strowger. It appeared in evidence that the plaintiff purchased his farm, through which said road passes, of Samuel Strowger and took title thereto from him.

The statute requires that the survey shall be incorporated in the order. (1 R. S., 513, § 55.) That was not done, literally. But the order purports to accord with a survey; the survey in question is recorded at the same time with the order; and it is found that both papers describe the same highway. The presumption arising from the difference in dates is, that the survey and release were made in April, 1853, but were not acted upon by the commissioner until January, 1854, and that the commissioner, soon after deciding the matter, filed both papers with the town clerk, as it was his duty to do. (1 R. S., 518, § 83.) It is also to be presumed, from the date of the recording, that both papers were filed at one and the same time. Furthermore, the papers, including the release, were recorded in the proper book, on continuous pages, and so far as appears, with nothing intervening between them. There is no evidence that

the order referred to any other survey of the road in question, or that any other was ever made or recorded. These circumstances identify the survey, beyond all doubt, as the one referred to in the order, and so, the purpose of the statute, which was to secure a record of the route of the road, seems to have been fully answered. A mere informality should not be deemed fatal, there being a substantial compliance with the requirements of the statute. (*Van Bergen* v. *Bradley*, 36 N. Y., 316.)

It is not necessary to the valid laying out of a highway that there should be a written application therefor. The commissioner may act of his own motion. (1 R. S., 513, § 55; *Gould* v. *Glass*, 19 Barb., 179; *The People* v. *The Supervisors of Richmond County*, 20 N. Y., 252.) The recital in the order that the highway was laid out upon the application of Strowger is proof of the fact recited, or it is not. If it proves the fact, the application is to be presumed to have been in the form prescribed by law, nothing appearing to the contrary ; if it does not prove the fact, then, for aught that appears, the commissioner acted of his own motion.

A parol consent to the laying out of a road through improved lands is good until revoked. (*People* v. *Goodwin*, 1 Seld., 568.) It appeared that the persons who signed the release were the owners, and all the owners, of land on the line of the road. The release, in connection with the other circumstances of the case, was sufficient evidence, uncontroverted, of the fact that the persons who executed it consented to the laying out of the road.

Sufficient appears then to show that the commissioner had jurisdiction to proceed, and to lay out the road where he did, and that showing being accompanied by proof of a valid order, the evidence of a laying out of the alleged road is complete. *Extremis probatis, media presumuntur*.

The west end of the road was never opened, but about three-fourths of a mile of the road next to the five mile line had been known as "Fullam's lane," and had been traveled and worked considerably by the occupants of the lands adjoining it, before the road was laid out. At that time, it was crossed by fences and gates or bars, at intervals, through which said occupants were allowed to pass, but without claim of right on their part. These

facts in respect to the existence and use of the lane were found. by the referee, and he also found that after the aforesaid order laying out the road was made, no change took place in respect. to the line of fences, or in respect to the cross-fences and gates. and bars, except that one cross-fence and gate was removed a few rods west of its former position; and he further found as a. fact, that said highway was never opened. That it was never opened the entire length of the survey is undisputed; but it. also appears by a decided preponderance of evidence that, after the order was made, the easterly part of the road already referred to was worked several seasons under the direction of the public authorities, it was opened to travel and was traveled, without interruption, except that some of the occupants of the lands adjoining kept up cross-fences, for the purpose of restraining cattle or protecting crops, but not for the purpose or with the intent of preventing the use of the road, and that such cross-fences were supplied with gates or bars which were open in the winter, and which travelers were at liberty to open, and did open, habitually, in the summer season, for the purpose of passing through. At times, some of the adjoining occupants disputed the right of the public to use the road, but the right seems to have been persistently asserted each year, either by user, or by the action of the public authorities in working the road, and. sometimes by both. This state of things continued until the commencement of this action in 1874.

The statute prescribing that a laid out road shall be opened and worked within six years after making the order does not prescribe how much or how well it shall be worked; if opened and worked at all, it will not lose its legal existence. ' (*Marble* v. *Whitney*, 28 N. Y., 297.) The most that can be claimed in the present case is that the westerly portion of the surveyed route, which was. not opened or worked at all, ceased to be a public highway, but the remaining three-quarters of a mile, if opened and worked within six years, was not so affected.

Neither is it any objection to this view of the case that the portion of the road so kept in existence did not connect at its. western terminus with any other highway. A *cul de sac* may constitute a highway. (*The People* v. *Kingman*, 24 N. Y., 560.)

The fact that the public anthorities permitted occupants of lands on the line of the road to keep up cross-fences for their own convenience, which, however, were so constructed, by means of bars or gates, as not to prevent the public from passing and repassing, did not divest the road of its public character. At most it shows an acquiescence by the public and the public authorities, in a partial obstruction of the highway, for the convenience of the occupants; but such acquiescence is no evidence that the road was not opened and worked as a public highway, or that it was abandoned as such. (*Marble* v. *Whitney*, *supra*, op. of WRIGHT, J., 305.)

One of the numerous exceptions taken on the trial by the defendant's counsel points to an erroneous ruling. The plaintiff, testifying in his own behalf, was allowed, against the defendant's objection, to state declarations made to him by Samuel Strowger, his grantor, to the effect that the attempt to open the road had been abandoned, and the commissioner had refused to open it further, and for that reason he, Strowger, had fenced it up. The testimony was inadmissible, and as it bore upon the very point on which the case was decided against the defendant, it is impossible to say that it did do harm.

The judgment should be reversed and new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

Judgment reversed and new trial ordered, costs to abide event.