In the Matter of the Application of JOHN GILES FORD, Appellant, for a Peremptory Writ of Mandamus against THE BOARD OF SUPERVISORS OF DELAWARE COUNTY, Respondent.

*Publication of election notices — effect of more than one paper being designated by the board of supervisors — in fixing the compensation therefor, the supervisors are not limited by the prices fixed by section 21 of the County Law.*

Under section 22 of the County Law (Laws of 1892, chap. 686) the board of supervisors of a county are authorized to direct the publication of the election notices in but two newspapers, one representing each of the two principal political parties.

An attempt by the members of the board of supervisors to designate for this purpose four papers for each of the two principal political parties is not valid as to the paper first mentioned in each of the respective lists, but is void as to all of the papers so designated, and no resolution revoking the designation is necessary.

Section 21 of the County Law, relative to the publication of the Session Laws, provides: "The expense of such publication * * * in counties not having a city of over fifty thousand inhabitants shall not be less than twenty nor more than fifty cents per folio, and in other counties not less than thirty nor more than fifty cents per folio; the specific rate in either case to be fixed by the board of supervisors."

Section 22, relating to the publication of election notices, provides: "Such boards, except in the counties of Erie and Kings, shall, in like manner, desig-

nate two newspapers, representing respectively each of the two principal political parties into which the electors of the county are divided, in which shall be published the election notices issued by the Secretary of State, and the official canvass, and fix the compensation therefor, which shall be a county charge."

*Held,* that the phrase, "in like manner," contained in section 22, only relates to the designation of the newspapers in which the election notices shall be published, and not to the fixing of the compensation for the publication of such notices;

That the board of supervisors, in fixing the compensation for the publication, is not limited by the rates fixed by section 21 for publishing the Session Laws.

APPEAL by the petitioner, John Giles Ford, from an order of the Supreme Court, made at the Broome Special Term and entered in the office of the clerk of the county of Delaware on the 21st day of December, 1903, denying the petitioner's application for a peremptory writ of mandamus.

The relator is the proprietor of a Republican newspaper published in the county of Delaware known as the *Stamford Recorder.*

During the annual session of the board of supervisors of that county held in November, 1902, the Republican members of that board signed and filed with its clerk a written designation of four Republican papers, in which designation the relator's paper was first named, to publish the election notices for the ensuing year. A similar designation of four Democratic papers was made and filed by the Democratic members of the board for the same purpose.

Upon discovery, in July, 1903, that the election notices would be of unusual length and if published in eight papers at the old rate would involve an expense of upwards of $20,000, a special meeting of the board of supervisors was called and convened on the twentieth of that month, and on the next day, after being advised by the district attorney of the county that the designation of four papers for each party to publish the election notices was an illegal designation, resolutions were unanimously passed by the board revoking and rescinding the designation theretofore made, directing the members of the board representing each of the two principal parties to each designate one paper to publish the election notices and fixing the compensation for the papers so to be designated at ten cents a folio for the first 300 folios and five cents a folio for all folios in excess of that number, for the publication of such notices.

When the relator became aware of the fact that it was claimed that the designation of his paper, with the three other papers, was invalid, he on the 20th day of July, 1903, filed with the clerk of the board a written acceptance of such designation.

After the adoption of such resolutions the members of the two political parties proceeded to make designations, and all the Republican members on July 21, 1903, signed a written designation of the *Stamford Recorder* to publish the election notices in the county of Delaware for the year 1903.

The relator wrote below such designation the following : " The ·above designation is hereby accepted at the compensation fixed ·by the Board July 21st, 1903.    J. Giles Ford."

The designation and acceptance were filed with the clerk, and the relator published the election notices for the year 1903 in his paper ·the required length of time.

At the annual session of the board in November, 1903, the relator ·presented his bill for such publication, 341 folios at the rate of fifty cents per folio, amounting for fourteen weeks to $2,387, for audit.

The bill was audited by the board at 332 folios at the rate fixed by it and allowed at $442.40.

The difference in the number of folios arises from the board treating the matter published as one notice and not as separate notices in which fractional parts of a folio had been charged as for a full folio. There is no claim that the matter published contained in fact more than 332 folios.

Prior to 1903 the rate paid by the board had been fifty cents per folio pursuant to a resolution passed in 1900 fixing that rate.

From an order denying the relator's application for a peremptory writ of mandamus to compel the board to audit and allow his claim at the rate of fifty cents per folio according to the items thereof, he appeals.

*Charles L. Pashley*, for the appellant.

*George A. Fisher*, for the respondent.

CHESTER, J. :

The contention of the relator, briefly stated, is that his paper having been the first of the four named in the designation of November,

1902, such designation as to his paper was a valid one which could not thereafter be withdrawn or rescinded; that the Republican members had no power thereafter to make another designation; that the rate of compensation fixed by the resolution of July 21, 1903, was illegal because below the minimum fixed by law; that the acceptance of the designation on July 21, 1903, was signed by him while under duress and that by such acceptance he did not waive his right to publish the election notices under the prior designation and to be paid therefor at the previously existing rate of fifty cents per folio.

The County Law, which was in force at the time, authorized the designation of *two* newspapers only, one representing each of the two principal political parties, in which to publish election notices. (Laws of 1892, chap. 686, § 22.)   The attempted designation of four papers representing each of the two parties was clearly void as to all the papers so designated, unless the circumstance that the relator's paper was named first in enumerating the four makes the designation valid as to it.

Two cases are cited by the relator in support of his contention in this respect.   The first is *People* v. *Supervisors of Richmond Co.* (20 N. Y. 252).   There two persons had been appointed to fill vacancies in the office of commissioners of highways.   Three had been elected and classified.   The commissioners of the first and third class omitted to qualify and two were appointed to fill the vacancies without any designation of the class to which they respectively belonged.   JOHNSON, Ch. J., who wrote the opinion of the court, says: "It seems to me a natural construction to place upon such an appointment to regard the first-named appointee as appointed to the first class, and that construction I am, in the absence of any authority upon the subject, inclined to adopt, rather than come to the conclusion that no effectual appointment was made."   The only determination made upon that branch of the case was as to the classification of the two commissioners where the appointment of *both* was authorized, and such determination was based upon the construction which the court, in the absence of authority, deemed it essential to put upon an appointment so made.

The other case cited is *People ex rel. Banta* v. *Kneissel* (58 How. Pr. 404).   There the mayor of New York nominated to the board

of aldermen for confirmation four persons as inspectors of weights and measures, when there were only two such officers in the city, one for the first and the other for the second district. The board of aldermen acted upon the nominations separately, and the court held that the relator, who was the one first confirmed, was lawfully appointed, although in the opinion it was stated that "regularly and properly one person only should have been nominated for each of these offices."

These cases undoubtedly were properly decided upon the facts presented, but they should not be regarded as authorities to be extended beyond the questions there presented for decision.

Here there was an effort to deal out "patronage" to four papers instead of to one. This was attempted to be done by a single designation naming all four. There was but one transaction. The whole scheme was void as being unauthorized by law. The fact that the relator's paper happened to be first named in such a scheme cannot fairly be regarded as making a legal designation of his paper when all the rest of the attempt was concededly unlawful and void. Section 19 of the County Law (Laws of 1892, chap. 686, as amd. by Laws of 1900, chap. 400) authorizes the designation of certain newspapers to publish the Session Laws and Concurrent Resolutions of the Legislature required by law to be published, fixes the method of making such designation, and provides that "any designation of a paper or papers made contrary to the provisions of this section shall be void." Section 22 of the County Law provides for the designation "in like manner" of *two* newspapers for the publication of election notices. The language quoted from section 19 which by section 22 is thus made applicable to the method of designating papers to publish election notices is broad enough to cover and to prohibit a designation of papers in excess of the number authorized by law as well as to prevent a departure from the methods authorized by law for the designation, and the designation as a whole, including that of the relator's paper, was one which came under the express condemnation of the statute and was, therefore, unlawful. Such an attempt by members of the board could in no way bind the county nor confer any rights upon the relator.

The designation of November, 1902, having been unlawful, it was

THIRD DEPARTMENT, MARCH, 1904.          [Vol. 92.

as if no designation had been made and there was no need of the passage by the board of the resolution revoking and rescinding it. Without such resolution nothing stood in the way of a legal designation at the first opportunity.

The board was charged, I think, under the law, with the duty of fixing the compensation for publishing these notices. Section 19 of the County Law (as amd. *supra*) provides for the designation of newspapers for the publication of the Session Laws and for the manner of such designation. Section 21 provides that "the expense of such publication * * * in counties not having a city of over fifty thousand inhabitants shall not be less than twenty nor more than fifty cents per folio, and in other counties not less than thirty nor more than fifty cents per folio; the specific rate in either case to be fixed by the board of supervisors." Then follows section 22 relating to election notices and official canvass which is as follows: "Such boards, except in the counties of Erie and Kings, shall, in like manner, designate two newspapers, representing respectively each of the two principal political parties into which the electors of the county are divided, in which shall be published the election notices issued by the Secretary of State, and the official canvass, and fix the compensation therefor, which shall be a county charge."

The argument in behalf of the relator is that the phrase "in like manner" in section 22 refers not only to the method of designation, but to fixing the compensation, and, therefore, that the board in fixing the compensation was limited by the rates fixed by section 21 for publishing the Session Laws. To uphold that theory requires a somewhat forced and unnatural construction of the section. The language is that "such boards * * * shall, in like manner, designate two newspapers * * * in which shall be published the election notices * * * and fix the compensation therefor." It is not that it shall in like manner designate the newspapers and in like manner fix the compensation. I do not think we should give a forced or liberal construction to this section, the only effect of which in this case will be to add to the public burdens when the other construction seems the natural and reasonable one. But it is urged that such a construction will permit a board to fix a rate much above the maximum rate for publishing the Session Laws as well as one below

the minimum rate for such publication and much abuse might result We may trust to the electors to deal with a supervisor who would use his position to aid in fixing an unreasonably high rate or a rate above the usual or prevailing rate for such a service.

The view of the case so far expressed if correct leaves the question of the alleged duress of the relator in signing the acceptance of the last designation at the rate then fixed of little moment, yet it will be briefly referred to. It appears that the relator was present at the special session of the board in July and was told by several Republican members that as a condition of designating his paper he must sign a written acceptance thereof. He went before the board and protested against its action and stated what he claimed his rights to be under the alleged designation of the prior November. The written designation of his paper was then prepared and signed by all the Republican members. Before filing it he was informed that if he did not indorse his acceptance thereon the designation would be given to some other paper. He then wrote on the designation the words "The above designation is hereby accepted." That was not deemed sufficient, the chairman insisting that the words "at the compensation fixed by the Board July 21st, 1903," be added. These words were finally added and the acceptance signed by the relator. There was no duress or coercion about all this. The relator was over twenty-one years of age, possessed of all his faculties, under no restraint whatever and was engaged in making the best bargain for himself that he could. His conduct simply showed that if he could not procure the designation at the old fifty cent rate he was willing to accept it at the rate fixed by the board, and that if he had any rights under the prior unlawful designation he waived them by accepting the new designation upon the terms fixed by the board.

Upon all the facts of the case the Special Term was fully justified in exercising its discretion against granting the writ asked for by the relator.

The order should be affirmed, with ten dollars costs and disbursements.

Order unanimously affirmed, with ten dollars costs and disbursements.